IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| JAMES ROSEBORO, | ) Civil Action No. 0:05-1534-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| OLDCASTLE GLASS, INC., | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, James Roseboro ("Roseboro"), filed his complaint on May 27, 2005, alleging that his former employer, Oldcastle Glass, Inc. ("Oldcastle") retaliated against him in violation of Title VII and the Age Discrimination in Employment Act ("AEDA"), discriminated against him due to his race in violation of Title VII and § 1981, breached an employee handbook contract, breached the contract accompanied by a fraudulent act, and violated the South Carolina Payment of Wages Law, S.C. Code Ann. § 41-10-40. Oldcastle filed a motion for summary judgment with respect to all claims on March 31, 2006. Roseboro filed a "Partial Opposition to Defendant's Motion for Summary Judgment" on April 18, 2006.[1] Oldcastle filed a reply brief on April 28, 2006. Roseboro filed a sur-reply brief on May 2, 2006. On June 23, 2006, Roseboro filed a memorandum of supplemental authority based on the Supreme Court's decision in Burlington Northern & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405 (2006). Oldcastle filed a memorandum on the effect of the Burlington Northern case as related to this action on July 3, 2006.

---

[1]In this memorandum, Roseboro states that he does not oppose summary judgment as to his claims of racial discrimination and violation of the Payment of Wages Law. It is, therefore, recommended that summary judgment be granted as to these two claims.

**Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations

to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

**Facts**

The following facts are either undisputed or stated in the light most favorable to Roseboro:[2]

1.  Oldcastle, a successor to the HGP Industries, has been manufacturing glass products at its facility in Rock Hill, South Carolina, since 1999. (Pl. Dep. 37 and Peters Aff. ¶ 1).

2.  Roseboro was hired by HGP Industries in 1997 and continued his employment with Oldcastle until his termination. (Pl. Dep. 38-39).

3.  Roseboro received several employee handbooks published by Oldcastle during the course of his employment, the last one being furnished in 2003. (Pl. Mem., Ex. 5).

4.  The handbook contains a "Punctuality and Attendance" policy which assigns various "points" to a violation (i.e., absence, lateness, early quit, AWOL) and provides for

---

[2] In its original brief, Oldcastle recites a version of the applicable facts (Def. Mem., 2-11). Roseboro counters with a listing of disputed material facts. (Pl. Mem. 2-4).

progressive discipline based on an accumulation of points in a 12-month period. According to the policy, an accumulation of 8 points "will result in termination." (Id.).

5. At relevant times Roseboro worked in the fabrication department. Others who worked in the fabrication department were Chris Jackson ("Jackson"), the regular lead on Roseboro's shift, Jonathan Fewell ("Fewell"), and Eric "LNU" ("Eric").

6. Other supervisory employees included Antwan McCullough ("McCullough") and Carlos Henderson ("Henderson"), shift supervisors, Alan Smith ("Smith"), plant manager, and Rick Peters ("Peters"), general manager. Shirley Passmore ("Passmore") was in charge of human resources and accounting.

7. By May of 2004 Roseboro had accumulated 6 points under Oldcastle's Punctuality and Attendance policy.

8. During the week prior to Saturday, May 22, 2004, Smith posted a notice that the fabrication department would be required to work mandatory overtime on that Saturday (Smith Dep. 12, McCullough Dep. 22).

9. On Friday, May 21, 2004, Jackson spoke with Smith, and it was agreed that if the work was caught up overtime for the next day would be cancelled. Jackson advised the fabrication employees including Roseboro and Fewell of this possibility and told them he would give them a definite answer later in the day. (Jackson Dep. 15-16).

10. Jackson had to leave work early due to a family emergency and relayed no further instructions to the fabrication department. (Jackson Dep. 17).

11. On Friday afternoon Fewell spoke with McCullough. Since the fabrication department was caught up, McCullough advised Fewell that they would not have to work overtime the next day. (Fewll Dep. 62-63).[3]

12. Fewell told Roseboro that he would not be required to work on Saturday, May 22, 2004. (Fewell Dep. 64, Roseboro Dep. 125).

13. McCullough worked on Saturday as did Eric. Roseboro, Fewell and Jackson did not work.[4] (McCullough Dep. 22).

14. Smith came into the facility on Saturday and asked McCullough why Roseboro and Fewell were not at work. McCullough replied that they had not called in or shown up for work. (Smith Dep. 15).

15. On Monday, May 24, 2004, Smith reviewed the time sheets for Saturday and assessed Roseboro and Fewell 2 points each under the Punctuality and Attendance policy. The paperwork was then sent to Passmore in accounting. (Smith Dep. 22).

16. Passmore totaled Roseboro's points and informed Peters and Smith that Roseboro had accumulated 8 points. (Smith Dep. 17-18, Passmore Dep. 18, Peters Dep. 9-10).

17. On Tuesday, May 25, 2004, Passmore attended the deposition of Mark Costner in Columbia. Costner was a former employee who brought a Title VII and AEDA action against Oldcastle. (Pl. Mem., Ex. 10 and 13). See Costner v. Oldcastle Glass Co., Inc., 03:3698-22BD. During the deposition, Costner testified that several employees including the "Roseboro boys" had

---

[3]McCullough denies this conversation (McCullough Dep. 23). However, for the purpose of summary judgment, Fewell's testimony must be credited.

[4]It was understood when Jackson left early for the Friday emergency that he would not be at work on Saturday.

remarked that a specific Oldcastle employee was sexually harassing another employee. (Costner Dep. 163-64).

18. Peters and Smith reviewed the situation concerning Roseboro on Wednesday, May 25, 2004, and Peters decided that Roseboro should be terminated. (Peters Dep. 23-28).

19. Smith informed Roseboro of his termination at the end of the work on Wednesday, May 26, 2004. Smith advised Roseboro that he was assessed two points for failing to call in or appear for work on Saturday, May 22. (Smith Dep. 18-21, Roseboro Dep. 133-35).

## **Discussion**

1.  Retaliation

Roseboro asserts that he was terminated because he was a potential witness in the Costner litigation which was brought under Title VII and the AEDA. Since the retaliation provisions of these remedial statutes are the same, the undersigned will use the Title VII framework.

Pursuant to 42 U.S.C. § 2000e-3(a)

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, it must be demonstrated that:

(1) the employee engaged in protected activity;

(2) the employer took some adverse employment action against the employee; and

(3) a causal connection existed between the protected activity and the adverse action.

See Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); Carter v. Ball, 33 F.3d at 460.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 254. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that his termination was retaliatory.  Reeves v. Sanderson Plumbing Prods., Inc., supra.

An alleged protected activity may fall within § 2000e-3(a)'s "opposition clause" or its "participation clause."  A different analysis is employed dependant upon which clause is implicated.

"Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).  To determine whether an employee has engaged in legitimate opposition activity, courts must "balance the purpose of [Title VII] to protect persons engaging reasonably in activities opposing...discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981).

"Participation activity encompasses, as outlined in the statute, making a charge, testifying, or participating in a Title VII investigation, proceeding or hearing.  Kubico v. Ogden Logistics Servs., 181 F.3d 544 (4th Cir. 1999).  The reasonableness test of the opposition clause analysis is inapplicable to the consideration of a claim under the participation clause.  This distinction is based on the broad statutory language ("participated in any manner") with respect to the participation

clause. Kubico, 181 F.3d at 551. Further, "(a)ctivities under the participation clause are essential to the machinery set up by Title VII." Laughlin, 149 F.3d at 259 n. 4.

Roseboro asserts that the mention of his surname by Costner in a deposition in the case of Costner v. Oldcastle Glass Co., Inc. amounts to protected activity under the participation clause. He argues that the participation clause applies to him "because he was named as a potential witness in the Costner proceeding." (Pl. Mem., p. 14). The undersigned disagrees.

None of the cases cited by Roseboro stretch the protection of the participation clause to the extent he urges. He principally cites Jute v. Hamitlon Sunstrand Corp., 420 F.3d 166 (2d Cit. 2005). However, the specific holding of Jute is that "Congress intended the anti-retaliation clause to protect a volunteer witness poised to testify in support of a co-worker's discrimination claims." Id. at 175. In so holding, the Second Circuit specifically rejected the EEOC's argument that the "participation clause is so expansive that it encompasses **every** situation in which a plaintiff is involved in a Title VII proceeding, no matter how passively in favor of a fact specific approach." (Emphasis in original) Id., n. 6. The facts in Jute are quite dissimilar from the facts before this Court because Jute had substantial "involvement in the Bruton litigation...Jute had collaborated with Bruton, such that Bruton candidly named Jute as a voluntary and favorable witness. Moreover, the record indicates that Jute planned to testify on Bruton's behalf: as Jute testified..., she had saved vacation days so that she would be immediately available for deposition in the Burton litigation when finally called."[5] Id. at 175. Roseboro had no such involvement in the Costner litigation.

The other cases cited by Roseboro also rest on some type of active involvement in the litigation of another's discrimination claims. In Wermer v. La Crosse County, 407 F.Supp.2d 1013,

---

[5]The Bruton case settled so Jute was never deposed.

8

1026 (W.D.Wis. 2006), the plaintiff voluntarily agreed to be a witness in the discrimination cases of others. In Martin v. Mecklenburg County, 151 Fed. Appx. 275, 279 (4th Cir. 2005) (unpublished), the plaintiff took the affirmative step of telephoning the attorney of another worker in her discrimination case to offer information. Last, Roseboro cites Mulhall v. Ashcroft, 287 F.3d 543, 546 (6th Cir. 2002) and Lyons v. Red Roof Inns, Inc., 130 Fed. App. 957, 965 (10th Cir. 2005) for the proposition that being listed as a favorable witness by another in a discrimination case is sufficient for protection from retaliation under the participation clause. Of course, Roseboro does not even reach this level of involvement as there is no evidence that Costner ever listed Roseboro as a witness in the pleadings in his case. Further, not all courts agree that being listed as a witness is sufficient. See Felix v. Sun Microsystems, Inc., 2004 WL 911303, * 17 (D.Md. 2004).

Accepting Roseboro's argument would essentially embrace the argument rejected by the Second Circuit in Jute, i.e., the participation clause applies to every situation in which a co-employee is tangentially involved. Costner testified that he talked to "virtually everyone in the plant, all 35 employees" about the alleged sexual harassment when he mentioned the "Roseboro boys" (Costner Dep. 163). Under Roseboro's theory, all employees in the Oldcastle plant would be afforded protection under the participation clause.

Oldcastle further contends that Roseboro cannot establish the third element[6] of his prima facie case, causation, because the decisionmaker, Peters, was unaware that Roseboro's name was mentioned during Costner's deposition.[7] (Def. Mem. 22-24). It is axiomatic that an employer cannot

---

[6] It must be conceded that Roseboro's termination establishes the second element, an adverse employment action.

[7] Since Roseboro was terminated two days after Costner's deposition, causation would be inferred absent this argument. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d
(continued...)

retaliate based on protected activity of which the employer is unaware. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d at 654 and Causey v. Balog. 162 F.3d 795, 803 (4th Cir. 1998).

Peters, Smith, and Passmore are consistent in their testimony that Passmore did not relay anything about Costner's mention of "the Roseboro boys" to Peters and Smith after the deposition. It is uncontradicted that Peters made the decision to terminate Roseboro without such knowledge. Roseboro argues that he has produced sufficient evidence that Passmore was biased against him creating a question of fact for a jury. According to Roseboro, Smith told him at the time of his termination that if "he (Smith) could have got to it before Shirley Passmore got to it" that he (Roseboro) might not have been terminated (Pl. Dep. 136). However, the record shows that the only part Passmore played in the process was compiling the total points Roseboro had accumulated under the Punctuality and Attendance policy and forwarding the information to Smith and Peters. The record is insufficient to establish causation.

Oldcastle further argues that even if Roseboro could establish a prima facie case of retaliation, it has offered a legitimate, non-retaliatory reason for his termination, i.e., violation of the Punctuality and Attendance policy which Roseboro has failed to show is pretextual. The record shows that Roseboro was assessed two points for failing to call in and appear for work on May 22. It is undisputed that with this two-point assessment, Roseboro had accumulated a total of eight points subjecting him to mandatory termination. Roseboro does not argue that other employees who accumulated eight points were not terminated. The only evidence in the record is that Oldcastle

---

[7](...continued)
653, 657 (4th Cir. 1998).

terminated all employees who accumulated eight points (Peters Aff., ¶ 2). It also appears that Oldcastle treated Fewell, the other employee who failed to appear on May 22, the same as Roseboro. Fewell was also assessed two points for the infraction giving him a total of seven and one-half points. Later, Fewell was terminated when he reached eight points. (Fewell Dep., 50-56).

Roseboro argues that Oldcastle's stated reason for his termination is a pretext for retaliation because he was told by Fewell that the mandatory overtime had been cancelled. According to Fewell, Smith gave him supervisory responsibility in the absence of Jackson (Fewell Dep. 62). On Friday, May 21 after Jackson had departed, Fewell asked McCullough if they would be required to work on Saturday. McCullough told them they did not have to work. (Id. 63). For this reason, neither Fewell nor Roseboro called in or appeared for work on Saturday.[8]

This evidence creates an issue of material fact as to whether Oldcastle excused Roseboro from work on May 22, 2004, and then terminated him in retaliation for his asserted protected activity. Should the Court conclude that, Roseboro has established a prima facie case of retaliation. Oldcastle's motion for summary judgment should be denied.

    2.    Contract Claims

Roseboro alleges that his termination breached the contract established between him and Oldcastle by its employee handbook. Oldcastle asserts that no contract existed based on its handbook, and even if there was a contract, it was not breached.

> The typical handbook employment case may be resolved by making three determinations. A handbook forms an employment contract when: (1) the handbook provision(s) and procedure(s) in question apply to the employee,

---

[8] McCullough denies the conversation, and McCullough and Smith dispute that Fewell had any decision making authority.

> (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer.

Grant v. Mt. Vernon Mills, 370 S.C. 138, 634 S.E.2d 15, 20 (Ct. App. 2006) (citations omitted).

Using this framework and viewing the facts in the light most favorable to Roseboro, the employee handbook created a contract between the parties (see Pl. Mem., Ex. 5). It is undisputed that the Punctuality and Attendance policy applied to Roseboro.

The Punctuality and Attendance policy is, in effect, a progressive discipline policy which is stated in mandatory terms. For instance, the policy specifically states the following with respect to the accumulation of points:

> Five (5) points will result in a verbal warning.
> Six (6) points will result in a written warning.
> Seven (7) points will result in a three (3) day suspension.
> Eight (8) points will result in termination.

This part of the handbook contains no language which would allow Oldcastle to deviate from the progressive disciple. In this way it differs from the "Personal Conduct" policy which immediately proceeds the Punctuality and Attendance policy. See Horton v. Darby Electric Co., Inc., 360 S.C. 58, 599 S.E.2d 456 (S.Ct. 2004). There is no disclaimer within the Punctuality and Attendance policy. The disclaimers which are contained in the "General Information" portion of the handbook are not conspicuous because they are not set apart or written in bold type. Hessenthaler v. Tri-County Sister Help, Inc., 365 S.C. 101, 616 S.E.2d 694 (S.Ct. 2005). Thus, the undersigned concludes for the purpose of summary judgment that a contract existed between Roseboro and Oldcastle.

The issue becomes whether Oldcastle breached the contract. Roseboro's allegation is not typical of cases involving breach of contract based on a violation of the employer's progressive

discipline policy. Normally, the plaintiff alleges that the employer failed to follow its mandatory policy, and the defendant argues that the policy itself is permissive. Instead, Roseboro asserts that the policy was violated because Oldcastle wrongfully assessed him two points for not appearing for overtime on May 22. In the light most favorable to Roseboro, Fewell was in the chain of command, followed the chain of command, and advised Roseboro that he did not have to appear. The undersigned finds that this record is sufficient to create questions of fact precluding summary judgment on Roseboro's contract claims.[9]

---

[9] This would also include Roseboro's claim of breach of contract with fraudulent intent. In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach. Harper v. Ethridge, 290 S.C. 112, 348 S.E.2d 374 (Ct.App.1986). The fraudulent act is any act characterized by dishonesty in fact or unfair dealing. Id. "Fraud," in this sense, "assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence." Sullivan v. Calhoun, 117 S.C. 137, 139, 108 S.E. 189, 189 (1921) (citation omitted).
Connor v. City of Forest Acres, 348 S.C. 454, 560 S.E.2d 606, 612 (S.Ct. 2002). There is a question of fact as to whether Oldcastle fraudulently assessed the two points against Roseboro.

13

**Conclusion**

Based on a review of the record, it is recommended that defendant's motion for summary judgment be:

1. Granted as to plaintiff's claims for race discrimination, retaliation, and violation of the South Carolina Payment of Wages Law; and

2. Denied as to plaintiff's state law contract claims. It is also recommended that these claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) to allow plaintiff to pursue them in state court.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

October 20, 2006
Columbia, South Carolina